UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

**GREGORY BURGESS,**

    Plaintiff**,**                                  Case No.:

**v.**

**MAVERICK BOAT GROUP, INC.**

    Defendant**.**

    _____/

## **COMPLAINT**

    Plaintiff, by and through his undersigned counsel, brings this action for damages against Defendant, Maverick Boat Group, Inc., alleging race discrimination in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981. Plaintiff is a Black male and was subjected to racial discrimination by Defendant during his employment. Plaintiff promptly reported the race discrimination to Defendant and Defendant responded by firing Plaintiff in retaliation for his complaints. In further support of this complaint, Plaintiff states as follows:

### Parties

    1.    Plaintiff, Gregory Burgess, is a qualified Black male and was employed by Defendant for two years as a Harness Technician in Fort Pierce, Florida.

    2.    Defendant is a for-profit, domestic corporation operating as boat builder in Fort Pierce, Florida.

    3.    Plaintiff worked for Defendant in Fort Pierce, Florida as a Harness Technician from August 2019 until his wrongful termination in September 2021.

Jurisdiction

4. Plaintiff lives in Fort Pierce County, Florida.

5. Defendant is a corporation domiciled in Fort Pierce County, Florida.

6. Defendant conducts business and employed Plaintiff in Fort Pierce County, Florida.

7. All material events occurred in Fort Pierce County, Florida.

8. This lawsuit has been filed in a timely manner.

9. All prerequisites have been satisfied.

10. Plaintiff is a qualified Black male and, therefore, a member of a protected class due to his race.

11. Defendant employs more than 15 employees and is an employer subject to Title VII of the Civil Rights Act and 42 U.S.C § 1981.

12. Plaintiff is entitled by virtue of Title VII of the Civil Rights Act and 42 U.S.C. 1981 to be protected from racial discrimination and is further entitled to be free from retaliation in the workplace for reporting to their employer Plaintiff's race-based discrimination related complaints.

General Factual Allegations

13. Plaintiff was employed by Defendant as a Harness Technician from approximately August 2019 until September 29, 2021.

14. As a Harness Technician, Plaintiff was responsible for repairing, fabricating, modifying, and installing electrical wiring components for ground support equipment and flight hardware.

15. As a Harness Technician, Plaintiff was under the supervision of Defendant's supervisor "Taz" (Last Name Unknown).

16. Defendant's supervisor, Taz, is a White male and Plaintiff is a Black male.

17. From the time of Plaintiff's hire and continuing until his wrongful termination, Defendant's White supervisor discriminated against, and belittled Plaintiff on account of Plaintiff's race.

18. Specifically, in September 2019, Defendant's supervisor routinely degraded Plaintiff by referring to Plaintiff as a "nigga".

19. Defendant's supervisor did not refer to non-Black Harness Technicians as "nigga".

20. Plaintiff immediately complained to Defendant's human resources department about Taz's race discrimination and racial slurs.

21. In response to Plaintiff's complaints of racial discrimination, Defendant disciplined Plaintiff by issuing Plaintiff a written warning. Defendant did not discipline Taz.

22. On or about May 21, 2021, Kevin (Last Name Unknown), an employee in Defendant's organization, hung a noose in Plaintiff's work area. Kevin and other employees laughed at Plaintiff when Plaintiff saw the noose hanging near his workstation.

23. Plaintiff was offended by the noose and reported the noose to his supervisor.

24. Kevin then admitted that he hung the noose and said it was a joke and it was no big deal.

25. That same day, Defendant suspended Plaintiff following Plaintiff's complaints about the noose hanging in the workplace.

26. Defendant did not discipline anyone for hanging the noose in Plaintiff's work area.

27. On or about September 28, 2021, Plaintiff's supervisor, Ariel Villareal, called Plaintiff a "Nigger" in the workplace during a conversation about work.

28. Plaintiff was offended by Mr. Villareal calling Plaintiff a "Nigger" and Plaintiff immediately reported Mr. Villareal's racial slur to Defendant.

29. Defendant did not discipline Mr. Villareal for calling Plaintiff a "Nigger".

30. However, the next day, on September 29, 2021, Defendant fired Plaintiff with extreme prejudice in retaliation for complaining about and objecting to racial discrimination in the workplace.

31. During Plaintiff's employment, Plaintiff was required to endure offensive conduct as a condition of his employment because Defendant refused to take any meaningful action to stop the race discrimination.

32. Being called a "Nigger", repeatedly, by White superiors created an intimidating, abusive, and hostile work environment for Plaintiff. Plaintiff did not feel safe or protected in the workplace.

33. Hanging a noose in Plaintiff's work area created an intimidating, abusive, and hostile work environment for Plaintiff. Plaintiff did not feel safe or protected in the workplace.

34. Plaintiff was damaged emotionally and financially as a direct result of Defendant's racial discrimination and wrongful termination.

**Count One**
**Race Discrimination in violation of Title VII**

35. Plaintiff hereby incorporates and re-alleges 1-34, above.

36. Plaintiff is a Black male and is therefore a member of a protected class due to his race.

37. Plaintiff is a Black employee and was employed by Defendant as a Harness Technician.

38. Plaintiff was qualified to perform his job at all times during Plaintiff's employment with Defendant.

39. During Plaintiff's employment with Defendant, Plaintiff was routinely subjected to harassment and discrimination because of his race.

40. Plaintiff was repeatedly called names such as "Nigga" and "Nigger" by White superiors during his employment with Defendant.

41. Defendant's employee also hung a noose in Plaintiff's work area.

42. Plaintiff was required to endure the name calling and noose hanging in order to remain employed by Defendant.

43. Plaintiff was intimidated, humiliated, and embarrassed by the name calling and noose hanging.

44. Plaintiff considered the working environment to be intimidating, hostile, and abusive.

45. Any reasonable person working under the same conditions as Plaintiff would consider the working conditions to be intimidating, hostile, and abusive.

46. Defendant consistently and habitually treated Plaintiff in a less favorable manner than non-Black employees in Defendant's workplace.

47. Defendant treated Plaintiff in a less favorable manner than non-Black employees because Plaintiff is a Black male.

48. Plaintiff was entitled to be treated in the same manner as non-Black employees and was entitled to receive the same terms, conditions, privileges, and benefits as the non-Black employees in Defendant's workplace.

49. Plaintiff reported and objected to the racially disparate workplace which Plaintiff was subjected while employed by Defendant.

50. Defendant was not permitted to subject Plaintiff to a racially disparate workplace.

51. Defendant subjected Plaintiff to a racially hostile workplace and harassed Plaintiff because of his race.

52. Plaintiff was damaged as a direct result of Defendant's discriminatory treatment and retaliation.

## Count Two
### Race Discrimination in violation of 42 U.S.C. § 1981

53. Plaintiff hereby incorporates and re-alleges 1-34, above.

54. Plaintiff is a Black male and is therefore a member of a protected class due to his race.

55. Plaintiff is a Black employee and was employed by Defendant as a Harness Technician.

56. Plaintiff was qualified to perform his job at all times during Plaintiff's employment with Defendant.

57. During Plaintiff's employment with Defendant, Plaintiff was routinely subjected to harassment and discrimination because of his race.

58. Plaintiff was repeatedly called names such as "Nigga" and "Nigger" by White superiors during his employment with Defendant.

59. Defendant's employee also hung a noose in Plaintiff's work area.

60. Plaintiff was required to endure the name calling and noose hanging in order to remain employed by Defendant.

61. Plaintiff was intimidated, humiliated, and embarrassed by the name calling and noose hanging.

62. Plaintiff considered the working environment to be intimidating, hostile, and abusive.

63. Any reasonable person working under the same conditions as Plaintiff would consider the working conditions to be intimidating, hostile, and abusive.

64. Defendant consistently and habitually treated Plaintiff in a less favorable manner than non-Black employees in Defendant's workplace.

65. Defendant treated Plaintiff in a less favorable manner than non-Black employees because Plaintiff is a Black male.

66. Plaintiff was entitled to be treated in the same manner as non-Black employees and was entitled to receive the same terms, conditions, privileges, and benefits as the non-Black employees in Defendant's workplace.

67. Plaintiff reported and objected to the racially disparate workplace which Plaintiff was subjected while employed by Defendant.

68. Defendant was not permitted to subject Plaintiff to a racially disparate workplace.

69. Defendant subjected Plaintiff to a racially hostile workplace and harassed Plaintiff because of his race.

70. Plaintiff was damaged as a direct result of Defendant's discriminatory treatment and retaliation.

## Count Three
### Retaliation in violation of Title VII

71. Plaintiff hereby incorporates and re-alleges 1-34, above.

72. Plaintiff is a Black male and therefore a member of a protected class due to his race.

73. Plaintiff was employed by Defendant until approximately September 29, 2021.

74. Plaintiff was subjected to racially disparate workplace environment repeatedly throughout the period of time in which Plaintiff worked for Defendant.

75. Defendant consistently and habitually treated Plaintiff in a less favorable manner than non-black employees in Defendant's workplace.

76. Defendant treated Plaintiff in a less favorable manner than non-Black employees because Plaintiff is a Black male.

77. Plaintiff was entitled to be treated in the same manner as non-Black employees and was entitled to receive the same terms, conditions, privileges, and benefits as the non-Black employees in Defendant's workplace.

78. Plaintiff reported and objected to the racially disparate workplace which Plaintiff was subjected while employed by Defendant.

79. More specifically, Plaintiff contacted management and Defendant's Human Resources department and complained of racial discrimination on Plaintiff by Defendant's White employees.

80. Plaintiff's complaints were made in good faith and were protected activities.

81. Defendant was not permitted to retaliate against Plaintiff for his good faith complaints to Defendant.

82. Nonetheless, Defendant retaliated against Plaintiff with extreme prejudice in direct response to Plaintiff good faith complaints about racial discrimination.

83. Defendant terminated Plaintiff's employment because Plaintiff complained about racial discrimination.

84. But for Plaintiff's complaint to about racial discrimination, Defendant would not have terminated Plaintiff's employment.

85. Plaintiff was damaged as a direct result of Defendant's retaliatory behavior.

## Count Four
### Retaliation in violation of 42 U.S.C. § 1981

86. Plaintiff hereby incorporates and re-alleges 1-34, above.

87. Plaintiff is a Black male and therefore a member of a protected class due to his race.

88. Plaintiff was employed by Defendant until approximately September 29, 2021.

89. Plaintiff was subjected to racially disparate workplace environment repeatedly throughout the period of time in which Plaintiff worked for Defendant.

90. Defendant consistently and habitually treated Plaintiff in a less favorable manner than non-black employees in Defendant's workplace.

91. Defendant treated Plaintiff in a less favorable manner than non-Black employees because Plaintiff is a Black male.

92. Plaintiff was entitled to be treated in the same manner as non-Black employees and was entitled to receive the same terms, conditions, privileges, and benefits as the non-Black employees in Defendant's workplace.

93. Plaintiff reported and objected to the racially disparate workplace which Plaintiff was subjected while employed by Defendant.

94. More specifically, Plaintiff contacted management and Defendant's Human Resources department and complained of racial discrimination on Plaintiff by Defendant's White employees.

95. Plaintiff's complaints were made in good faith and were protected activities.

96. Defendant was not permitted to retaliate against Plaintiff for his good faith complaints to Defendant.

97. Nonetheless, Defendant retaliated against Plaintiff with extreme prejudice in direct response to Plaintiff good faith complaints about racial discrimination.

98. Defendant terminated Plaintiff's employment because Plaintiff complained about racial discrimination.

99. But for Plaintiff's complaint to about racial discrimination, Defendant would not have terminated Plaintiff's employment.

100. Plaintiff was damaged as a direct result of Defendant's retaliatory behavior.

### Jury Demand and Prayer for Relief

WHEREFORE, Plaintiffs desires a trial by jury and judgment and all relief available under Title VII of the Civil Rights Act and 42 U.S.C. § 1981, including back pay, front pay, emotional distress, punitive damages, compensatory damages, reinstatement as well as reasonable attorney fees and costs and pre-judgment interest.

DECLARATION PURSUANT TO 28 U.S.C. SECTION 1746

I HEREBY AFFIRM THAT THE FACTUAL STATEMENTS MADE ABOVE ARE TRUE AND CORRECT, UNDER PENALTY OF PERJURY.

DATED: 2/9/2024

PRINT NAME: Gregory Burgess

SIGNATURE: *[DocuSigned by: G BMJ / D4F2BDB2A3364BC...]*

DATED this 9th day of February 2024.

/S/ Kyle J. Lee
Kyle J. Lee, Esq.
FLBN: 105321
LEE LAW, PLLC
1971 West Lumsden Road, Suite 303
Brandon, Florida 33511
Telephone: (813) 343-2813
Kyle@KyleLeeLaw.com
Info@KyleLeeLaw.com